**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **WALKER D. BOWEN, as the administrator of the estate of TERRANCE DESMOND BOWEN,**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**CARL HUMPHREY, DOUG UNDERWOOD, ANTHONY BROOKINS, CAGER EDWARD DAVIS, and BRUCE REX SCHOOLCRAFT, D.O., in their individual capacities,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **CIVIL ACTION NO. 5:13-CV-256 (MTT)**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Terrance Bowen was beaten to death by his prison cellmate.  This lawsuit, brought by his estate under 42 U.S.C. § 1983, alleges the Defendants violated Bowen's Eighth Amendment rights when they placed him in a cell with Carl Merkerson, the man who killed him.  The Defendants are Carl Humphrey, warden of Baldwin State Prison; Doug Underwood, deputy warden of security at the prison; Anthony Brookins, lieutenant in charge of the unit in which Bowen and Merkerson lived; Cager Edward Davis, a corrections officer at the prison who supervised inmates in the unit where Bowen and Merkerson lived; and Bruce Rex Schoolcraft, D.O., a psychiatrist who treated inmates' mental illnesses.  (Doc. 50, ¶¶ 3-8).

Before the Court is Dr. Schoolcraft's motion to dismiss (Doc. 52) the Plaintiff's amended complaint (Doc. 50).[1]  For the following reasons, the motion is **DENIED**.

## I.  FACTS

After nearly two years of incarceration, Merkerson, a convicted murderer, was moved to Baldwin State Prison on February 18, 2010.  (Doc. 50, ¶¶ 9, 11).  He was a Level III mental health inmate.  (Doc. 50, ¶ 13).  Inmates assigned this designation are described in a prison manual as having a "tenuous mental status that is easily overwhelmed by everyday pressures, demands and frustrations" as well as "impulsive behavior, poor judgment, a deterioration of emotional controls, loosening of associations, delusional thinking and/or hallucinations."  (Doc. 50, ¶ 14).  Merkerson had a long history of paranoid schizophrenia, and he suffered from delusions, including one that his head had been severed and replaced.  (Doc. 50, ¶¶ 56-60).  When his mental condition "decompensated," he became violent and dangerous, and he was unable to control his impulses or understand the consequences of his actions.  (Doc. 50, ¶¶ 64-66).

On February 26, 2010, shortly after he was transferred to Baldwin State Prison, Merkerson assaulted his cellmate, John Williams.  (Doc. 50, ¶¶ 17, 18).  The resulting disciplinary report characterized Merkerson's conduct as a "High-Assault without a weapon."  (Doc. 50, ¶ 21).  Under prison guidelines, "MH-MR inmates…charged with assault are to be 'housed' alone."  (Doc. 50, ¶ 23).  Merkerson was then moved to a cell

---

[1] Dr. Schoolcraft is not a state employee.  The state Defendants also have a pending motion to dismiss.  (Doc. 53).  On June 6, 2014, the Court granted the Plaintiff 60 days to engage in limited discovery related to his allegations against the state Defendants, postponing consideration of their motion.  Additionally, because he is not a state employee, Dr. Schoolcraft does not contend he is entitled to qualified immunity.

by himself in unit K-3, the lock-down segregation unit for disciplinary, protected custody, and mental health inmates.  (Doc. 50, ¶¶ 28, 38).

During the last weekend in February 2010, Merkerson's mother visited her son. (Doc. 50, ¶ 99).  Shortly after that visit, about a week before Merkerson killed Bowen, she spoke by telephone to Merkerson's mental health counselor.  She told the counselor that Merkerson's mental condition was decompensating, that he became violent and dangerous when that happened, and that he needed to be isolated from other inmates so that he would not hurt anyone.  (Doc. 50, ¶¶ 99-103).  Based on this warning and her own observations of Merkerson, Merkerson's mental health officer arranged for a treatment team meeting on March 2 or March 3 about Merkerson's decompensation.  (Doc. 50, ¶¶ 193-194).  The treatment team included Dr. Schoolcraft. (Doc. 50, ¶ 195).

At the meeting, Dr. Schoolcraft was informed that Merkerson was dangerous and decompensating.  The team, which included Dr. Schoolcraft, thought Merkerson should be housed in a cell by himself so that he would not harm others.  (Doc. 50, ¶¶ 196-197). Merkerson's mental health counselor also told Dr. Schoolcraft that Merkerson needed an involuntary medicine evaluation because he was not swallowing his pills due to his decompensation.  (Doc. 50, ¶¶ 198-199).  After the treatment team meeting, Dr. Schoolcraft reviewed Merkerson's medical records detailing his psychiatric condition. He also observed him in person.  (Doc. 50, ¶¶ 204-205).  However, Dr. Schoolcraft did not perform an involuntary medicine evaluation or order the involuntary medication of Merkerson.  (Doc. 50, ¶¶ 202-203).  Nor did he take action to ensure that Merkerson would remain housed alone even though he could have had Merkerson transferred to

the Crisis Stabilization Unit, the Acute Care Unit, or Central State Hospital.  (Doc. 50, ¶¶ 208-213).

Merkerson remained alone in his cell until March 7, 2010, when Bowen was placed in the cell with him.  (Doc. 50, ¶ 29).  Bowen was a mental health inmate who had been in the prison system since June 2003.  (Doc. 50, ¶¶ 30-31).  At five feet eight inches and 163 pounds, he was substantially smaller than Merkerson, who stood six feet two inches and weighed 250 pounds.  (Doc. 50, ¶¶ 69-70).  On March 9, 2010, two days after Bowen was moved to Merkerson's cell, officers serving lunch found Bowen with his head stuffed in the toilet, his body limp, brutally beaten, and unmoving.  (Doc. 50, ¶¶ 75-77, 80).  Blood painted the cell walls and ran out from under the cell door.  (Doc. 50, ¶¶ 79, 83).  Bowen was transported to the Medical Center of Central Georgia, where he died a few hours later.  (Doc. 50, ¶¶ 90, 95).

## II.  DISCUSSION

### A.    Motion to Dismiss Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – that the pleader is entitled to relief."

*Iqbal*, 556 U.S. at 679.  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

> **B.     Analysis**

Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates."  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)) (internal quotation marks omitted).  More to the point, they "have a duty to protect prisoners from violence at the hands of other prisoners."  *Id.* (quoting *Farmer*, 511 U.S. at 833) (internal quotation marks omitted).  Not every injury that one inmate suffers at the hands of another inmate gives rise to constitutional liability, but a prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."  *Id.* (quoting *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir.2003)) (internal quotation marks omitted).

To plead a failure to protect claim under the Eighth Amendment, a plaintiff must allege facts that show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation."  *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir. 2013) (internal quotation marks omitted); *Losey v. Warden*, 521 F. App'x 717, 719 (11th Cir. 2013).  The first element – risk of harm – is viewed

objectively.  *Caldwell*, 748 F.3d at 1099.  The second element – whether the defendants were deliberately indifferent to that risk – has both a subjective and objective component:  The plaintiff must show the defendants subjectively knew the inmate faced a substantial risk of serious harm and that the defendants disregarded that risk by not responding in an objectively reasonable manner.  *Id.*; *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007).  A prison official has subjective knowledge when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and when he "also draw[s] the inference." *Farmer,* 511 U.S. at 837; *Caldwell*, 748 F.3d at 1099-1100.  "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."  *Farmer*, 511 U.S. at 842.

In this case, Dr. Schoolcraft contends the claims against him should be dismissed because the Plaintiff cannot plausibly allege his subjective knowledge of the risk of harm Merkerson posed to Bowen.  The Court disagrees.  Accepting the Plaintiff's allegations as true, Dr. Schoolcraft actually knew that Merkerson, a convicted murderer suffering from schizophrenia, was dangerous and that his mental condition was decompensating to the point that he was an immediate danger to those around him.  Dr. Schoolcraft learned this from his participation in the treatment team meeting that had been prompted by a specific warning from Merkerson's mother.  Dr. Schoolcraft was further made aware that Merkerson was not taking his medication and that the treatment team believed he should not be placed in a cell with another inmate due to his dangerous condition.

Despite acquiring this knowledge, Dr. Schoolcraft did not act to ensure Merkerson was isolated from other inmates.  Dr. Schoolcraft protests that he did not know Bowen actually feared Merkerson or that Merkerson posed a "particularized risk" to Bowen.  However, the Plaintiff has sufficiently pled facts that suggest Dr. Schoolcraft knew that *any* inmate placed with Merkerson would be exposed to a substantial risk of serious harm simply by being confined to close quarters with him during that time.

Given what Dr. Schoolcraft allegedly knew about Merkerson's then-deteriorating condition, this is not a case where his actual knowledge of potential harm requires some additional event or piece of information regarding Bowen's specific fear of Merkerson. *See, e.g.*, *Carter*, 352 F.3d at 1349-50 (affirming summary judgment for the defendants where the plaintiff had not told them he feared the problem inmate who later attacked him or that the inmate had previously threatened him).  Unlike the inmate in *Carter*, whose past problems were not enough to put prison officials on notice of the danger he posed, Merkerson presented a specific risk to anyone placed in a cell with him at the time he attacked Bowen because it was at that time that his mental stability was breaking down.  Dr. Schoolcraft knew about this breakdown as it was happening.  Thus, there existed more than a generalized or speculative risk based on some history of past problems.  The risk Merkerson posed to a cellmate was imminent, and it was a risk about which Dr. Schoolcraft was subjectively aware.[2]

---

[2] As for Dr. Schoolcraft's ability and authority to keep Merkerson isolated from other inmates, which he claims was not within his purview, that will require a more in-depth evidentiary review and cannot be determined at this stage of the proceedings.

**III. CONCLUSION**

Accordingly, for the foregoing reasons, Dr. Schoolcraft's motion to dismiss is **DENIED**.

**SO ORDERED**, this 16th day of July, 2014.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT