IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| WALKER D. BOWEN, as the administrator of the estate of TERRANCE DESMOND BOWEN,  Plaintiff,  v.  CARL HUMPHREY, *et al.*,  Defendants. | ) ) ) ) ) ) ) ) CIVIL ACTION NO. 5:13-CV-256 (MTT) ) ) ) ) ) ) |

## ORDER

Terrance Bowen was beaten to death by his prison cellmate at Baldwin State Prison. This lawsuit, brought by Bowen's estate pursuant to 42 U.S.C. § 1983, alleges the Defendants violated Bowen's Eighth Amendment rights when they placed him in a cell with Carl Merkerson, the man who killed him. The Defendants are Carl Humphrey, warden of Baldwin State Prison; Doug Underwood, deputy warden of security at the prison; Cager Edward Davis, a corrections officer at the prison who supervised inmates in the unit where Bowen and Merkerson lived (collectively the "DOC Defendants"); and Bruce Rex Schoolcraft, D.O., a contract psychiatrist who treated inmates' mental illnesses. The Court previously denied Defendant Schoolcraft's motion to dismiss.[1] (Doc. 78).

---

[1] There, the Court concluded that the Plaintiff sufficiently alleged that Schoolcraft had subjective knowledge of the risk of harm Merkerson posed to Bowen. Unlike the DOC Defendants, Schoolcraft allegedly knew that Merkerson was "decompensating" because he was not taking his medication and that Merkerson's treatment team had concluded he should be isolated because of his increasingly dangerous condition. *Bowen v. Humphrey*, 2014 WL 3534919, at *3 (M.D. Ga).

The DOC Defendants have moved to dismiss (Doc. 86) the Plaintiff's second amended complaint (Doc. 83). For the following reasons, the Defendants' motion is **GRANTED**.

## I.   BACKGROUND[2]

After nearly two years of incarceration, Merkerson, a convicted murderer, was moved to Baldwin State Prison on February 18, 2010. (Doc. 83, ¶¶ 16-18). He was a Level III mental health inmate. (Doc. 83, ¶ 19). According to the "Prison's manual," a Level III mental health inmate has a "tenuous mental status that is easily overwhelmed by everyday pressures, demands and frustrations resulting in … impulsive behavior, poor judgment, a deterioration of emotional controls, loosening of associations, delusional thinking and/or hallucinations." (Doc. 83, ¶ 21).

On February 26, 2010, Merkerson assaulted his cellmate, John Williams. (Doc. 83, ¶ 23). The resulting disciplinary report characterized Merkerson's conduct as "High-Assault without a weapon." (Doc. 83, ¶ 27). Merkerson was required to be segregated from other inmates in an isolation cell because of his assault on Williams and because he was a mental health inmate. (Doc. 83, ¶ 28). Merkerson was then moved to a cell by himself in Unit K-3, "the lock-down segregation unit for disciplinary, protected custody, and mental health inmates." (Doc. 83, ¶¶ 28, 36). Merkerson remained alone in his cell until March 7, 2010, when Bowen was placed in the cell with him despite the "Placement Guidelines" requirement that mental health inmates like Merkerson be housed alone. (Doc. 83, ¶¶ 39, 46). Defendants Underwood and Davis were aware of this requirement. (Doc. 83, ¶¶ 177, 241). Nevertheless, Merkerson and Bowen were

---

[2] The facts are taken from the allegations in the second amended complaint and accepted as true for purposes of the motion.

housed together because Warden Humphrey had "instituted a policy of double-celling inmates." (Doc. 83, ¶¶ 145, 149).[3]

Underwood and Davis were aware that Merkerson and Bowen were double celled because they had read a population chart in the Unit's office that stated Bowen and Merkerson were housed together. (Doc. 83, ¶¶ 61-62). This chart also revealed that "Merkerson was a Mental Health inmate, convicted of murder, who recently had assaulted a cell mate." (Doc. 83, ¶ 63). Underwood and Davis had also read the segregation/isolation checklist ("checklist") attached to the outside of Merkerson and Bowen's cell door. (Doc. 83, ¶¶ 64, 190, 221, 223). This checklist indicated the unit from which Merkerson was transferred, that Merkerson was a mental health inmate, that he had been convicted of murder, and that he was in the cell for assaulting another inmate. (Doc. 83, ¶ 190).

On March 8, 2010, Bowen asked to be removed from the cell "because of Merkerson," but the request was denied, allegedly because of Warden Humphrey's double-celling policy. (Doc. 83, ¶¶ 151-54). The complaint does not allege Bowen asked to be moved because Merkerson had threatened him or that Bowen for any reason feared for his safety if he remained in the cell with Merkerson. Nor does the Plaintiff allege Underwood and Davis knew about Bowen's request.

During the morning of March 9, 2010, two days after Bowen was moved to Merkerson's cell, Underwood inspected their cell and saw the two inmates housed together. (Doc. 83, ¶ 181). That same morning, Davis signed the checklist outside the cell door and saw the population chart in the Unit's office. (Doc. 83, ¶¶ 221, 235). Later

---

[3] The Plaintiff alleges "[d]ouble-celling is impermissible if it would create a substantial risk of harm to an inmate by being housed with another inmate, who should be 'housed' alone." (Doc. 83, ¶ 148).

that day, officers found Bowen with his head stuffed in the toilet and his body limp, brutally beaten, and unmoving. (Doc. 83, ¶¶ 99-102). Merkerson had assaulted him. (Doc. 83, ¶ 100). Bowen was transported to the Medical Center of Central Georgia, where he died a few hours later. (Doc. 83, ¶¶ 90, 95).

The DOC Defendants moved to dismiss the Plaintiff's initial complaint, contending that the complaint failed to state a claim and that they were entitled to qualified immunity. The Court recognized that this put the Plaintiff at somewhat of a disadvantage. Bowen was not available to tell his version of events, and the Plaintiff had limited access to information relevant to Bowen's death. Accordingly, the Court allowed the Plaintiff to conduct limited discovery and amend his complaint to allege additional facts to support his allegation that the DOC Defendants had subjective knowledge that Merkerson posed a substantial risk of serious harm to Bowen. That discovery has been completed, and the Plaintiff has filed his second amended complaint. The DOC Defendants again moved to dismiss.

## II.   DISCUSSION

### A. Motion to Dismiss Standard

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted). However, "where the well-pleaded facts

do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B. Qualified Immunity Standard

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "'Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply.'"[4] *Edwards v. Shanley*, 666 F.3d 1289, 1294 (11th Cir. 2012) (quoting *Lewis v. City of W. Palm Beach,* 561 F.3d 1288, 1291 (11th Cir. 2009)).  To meet this burden, a plaintiff must establish that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation."  *City of W. Palm Beach*, 561 F.3d at 1291.  This two-step analysis may be done in whatever order is deemed most appropriate for the case.  *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

---

[4] None of the Parties dispute the Defendants were performing discretionary duties.  Accordingly, the Plaintiff has the burden to show qualified immunity does not apply.

The clearly established law must provide a defendant with "fair warning" that his or her conduct deprived the plaintiff of a constitutional right. *Hope v. Pelzer*, 536 U.S. 730, 739-41 (2002). A plaintiff "can demonstrate that the contours of the right were clearly established in several ways." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). First, a plaintiff can show that "a materially similar case has already been decided." *Id.* (internal quotation marks and citations omitted). Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (internal quotation marks and citation omitted). "Finally, the conduct involved in the case may 'so obviously violate[ ] th[e] constitution that prior case law is unnecessary.'" *Id.* (internal citations omitted). Clearly established precedent in this Circuit means decisions of the United States Supreme Court, the Eleventh Circuit, and the highest court of the pertinent state. *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

### C. The Plaintiff's Claims[5]

#### 1. Failure to Protect Claim against Underwood and Davis

The Plaintiff alleges that Underwood and Davis were deliberately indifferent to a substantial risk of serious harm that Merkerson posed to Bowen. Under the Eighth Amendment, prison officials have a duty to "take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)) (internal quotation

---

[5] "A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). To frame his claims against the DOC Defendants, the Plaintiff alleges legal conclusions throughout his complaint. He repeatedly alleges that the DOC Defendants were deliberately indifferent or that they were aware of a substantial risk of harm. The recitation of the elements of the Eighth Amendment claim carries no weight. *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013).

marks omitted). More to the point, they "have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* (quoting *Farmer*, 511 U.S. at 833) (internal quotation marks omitted). Not every injury that one inmate suffers at the hands of another inmate gives rise to constitutional liability, but a prison official violates the Eighth Amendment "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Id.* (quoting *Carter v. Galloway,* 352 F.3d 1346, 1349 (11th Cir.2003)) (internal quotation marks omitted).

Thus, to plead a failure-to-protect claim under the Eighth Amendment, a plaintiff must allege facts that show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Goodman v. Kimbrough,* 718 F.3d 1325, 1331 (11th Cir. 2013) (internal quotation marks omitted). The first element—risk of harm—is viewed objectively. *Caldwell*, 748 F.3d at 1099. The second element—whether the defendants were deliberately indifferent to that risk—has both a subjective and objective component: The plaintiff must show that the defendants subjectively knew the inmate faced a substantial risk of serious harm and that the defendants disregarded the risk by not responding in an objectively reasonable manner. *Id.*; *Rodriguez v. Sec'y for Dep't of Corr.*, 838 F.3d 611, 617 (11th Cir. 2007). A prison official has subjective knowledge when he is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and when he "also draw[s] the inference." *Farmer,* 511 U.S. at 837; *Caldwell*, 748 F.3d at 1099-1100. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official

acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.  However, "before [a defendant's] awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] generally problematic nature."  *Carter*, 352 F.3d at 1349.

Here, the Plaintiff alleges Underwood and Davis failed to protect Bowen from an inmate they knew posed a substantial risk of serious harm to Bowen.  Specifically, the Plaintiff alleges these Defendants were subjectively aware of this substantial risk because they had read the population chart and the checklist on Merkerson and Bowen's cell door before the assault.  These documents informed the Defendants that Merkerson was a Level III health inmate convicted of murder who had assaulted another inmate.  Thus, the Plaintiff alleges, they knew he should have been housed alone pursuant to the Placement Guidelines and mental health policy.

The Plaintiff's allegations, taken as true, are not sufficient to establish that either Underwood or Davis was aware Merkerson posed a substantial risk of serious harm to Bowen, or even if they were aware, that either Defendant, in fact, drew the inference of such a risk and deliberately ignored it.  The Plaintiff attempts to establish these elements by alleging Bowen asked to be moved the night before the assault.  (Doc. 83, ¶ 151).  But even if it somehow could be inferred that Bowen asked to be moved because of a particular threat posed by Merkerson, the Plaintiff does not allege Underwood and Davis were aware of this request.[6]  *Cf. Alsobrook v. Alvarado*, 986 F. Supp. 2d 1312, 1320 (S.D. Fla. 2013) (denying the defendants' motion to dismiss where

---

[6] In their depositions, Underwood and Davis were not asked whether they were aware Bowen had asked to be moved from his cell.  (Docs. 89-2; 89-3).

the plaintiff alleged he told one of the defendants of a specific threat by his cellmate and requested he be separated from his cellmate).  *See also Carter*, 352 F.3d at 1349-50.

At best, the allegations demonstrate that Underwood and Davis were aware of Merkerson's "generally problematic nature"[7] and that he was required to be housed alone.  *See Carter*, 352 F.3d at 1349.  However, awareness of Merkerson's "generally problematic nature" is not enough to demonstrate subjective awareness that Merkerson posed a substantial risk of serious harm to his cellmate.  *See id.*  The Eleventh Circuit's recent decision in *Caldwell*, also a failure-to-protect case, is particularly instructive in this regard.  There, the defendants were aware of the generally problematic nature of a prisoner who assaulted his cellmate.  *Caldwell*, 748 F.3d at 1093, 1095-96.  In addition, they knew that the prisoner, using the cellmate's personal effects, had started a fire in their cell the day before the assault.  *Id.* at 1094.  The fire quickly spread, destroying more of the cellmate's personal belongings.  *Id.*  After being rescued from the cell, the cellmate required a medical examination to assess his injuries.  *Id.*  The defendants then returned the cellmate to the cell even though the cellmate told the defendants that he feared for his life if he were returned to the cell.  *Id.*  No defendant conducted any further investigation before returning the cellmate to the cell.  *Id.* at 1095.  For example, they did not determine how the prisoner started the fire, why he started the fire, whether the prisoner was mentally stable, or whether the prisoner would again pose a threat to the cellmate's life.  *Id.*  The prisoner assaulted the cellmate early the next morning.  *Id.*  Reversing the district court's grant of summary judgment to the defendants, the Eleventh Circuit concluded that a reasonable jury could infer, based upon these facts,

---

[7] The Court does not suggest that merely "problematic" adequately describes Merkerson's problem.  The point is that Davis and Underwood were only aware of Merkerson's general condition and status.

that the defendants actually knew the cellmate faced a substantial risk of serious harm if he returned to his cell. *Id.* at 1101. Similar facts are not present here. Again, the Defendants knew about Merkerson's generally problematic nature, but, other than that, the Plaintiff alleges no facts suggesting the Defendants actually knew Merkerson posed a threat to Bowen.

Further, alleging that Underwood and Davis violated the Placement Guidelines by failing to separate Bowen from Merkerson, while perhaps negligent, does not rise to an actionable constitutional tort pursuant to 42 U.S.C. § 1983. *See Carter*, 352 F.3d at 1350 ("Defendants arguably should have placed Plaintiff elsewhere but 'merely negligent failure to protect an inmate from attack does not justify liability under section 1983.'" (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990))); *see also Goodman*, 718 F.3d at 1332 ("The failure to conduct the cell checks and head counts is negligence in the purest form."). In other words, violating a Department of Corrections policy, such as the Placement Guidelines or mental health policy, without more, is not subjective knowledge that one inmate poses a substantial risk of serious harm to another. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as [a constitutional violation]." *Farmer*, 511 U.S. at 838.

Thus, taking the Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Plaintiff's claim fails because he has not sufficiently alleged facts to state a plausible claim that either Underwood or Davis was subjectively aware that Merkerson posed a substantial risk of serious harm to Bowen. Because the Plaintiff

alleges no constitutional violation on the part of Underwood and Davis, they are entitled to qualified immunity.

### 2. Supervisory Liability Claim against Warden Humphrey

The Plaintiff's allegations against Humphrey raise a very narrow issue. He claims that Humphrey "instituted a policy of double-celling inmates." (Doc. 83, ¶ 145). The Plaintiff provides no other details about this alleged policy. For example, the complaint does not address whether the policy was to be applied in every instance or whether there were exceptions to the policy. The Plaintiff does not allege that the double-celling policy is facially unconstitutional. On the contrary, he acknowledges that inmates do not have a "general right to be 'housed' alone" and that "double-celling is generally permissible." (Doc. 83, ¶¶ 146-147). While the complaint alleges that an inmate should not be housed with another inmate if that double-celling would create a substantial risk of harm, the complaint does not allege Humphrey's policy required double-celling under those circumstances. (Doc. 83, ¶ 148). The complaint does not allege that Humphrey knew Bowen was housed with Merkerson, that Humphrey knew Bowen had asked to be removed from the cell, or, most significantly, that Humphrey knew or should have known the policy of double-celling was being applied in a way that exposed inmates to a risk of serious harm. Nevertheless, the complaint alleges that Humphrey, "by his double-celling policy, was deliberately indifferent to the substantial risk of harm to Mr. Bowen by being in the Cell with Mr. Merkerson." (Doc. 83, ¶ 160).

The Plaintiff acknowledges that supervisory officials cannot be held liable under § 1983 "for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)

(quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)) (internal quotation marks omitted).  The Plaintiff also acknowledges that a supervisor, in this case a supervisor promulgating a policy, can only be held liable if the supervisor participated directly in the unconstitutional conduct or if a causal connection exists between the supervisor's actions and the alleged constitutional violations.  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  Here, the Plaintiff attempts to allege a causal connection between Humphrey's double-celling policy and Bowen's death.

In dozens of cases, courts in the Eleventh Circuit have made clear how the causal connection between a policy and a constitutional violation can be established:

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  **Alternatively, the causal connection may be established when a supervisor's custom or policy … result[s] in deliberate indifference to constitutional rights** or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Harrison v. Culliver*, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting *Cottone*, 326 F.3d at 1360) (emphasis added).  Because he alleges no history of violations, no direct involvement by Humphrey, or any knowledge on Humphrey's part of his subordinates' allegedly unlawful conduct, the Plaintiff relies on the emphasized language.  He seems to argue that Humphrey's double-celling policy resulted in the other Defendants' deliberate indifference to Bowen's constitutional rights.  (Doc. 89 at 17).

The first response to this argument is that, as discussed above, the Plaintiff has not sufficiently alleged that Underwood and Davis were deliberately indifferent.  Thus, even assuming the Plaintiff reads the emphasized language correctly, he has not

sufficiently alleged that Humphrey's policy resulted in deliberate indifference on the part of Underwood and Davis to Bowen's constitutional rights.

The second response is that the Plaintiff reads the much-quoted language from *Cottone* far too literally. No case has ever suggested that a policymaker can be held liable simply because his facially constitutional policy is applied in a way that results in a constitutional violation. Rather, when a policymaker promulgates a facially constitutional policy, he can be held liable only if he "had actual or constructive notice of a flagrant, persistent pattern" of constitutional violations resulting from the application of the policy. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007). In short, the Plaintiff must still sufficiently allege that Humphrey himself was deliberately indifferent. He makes this allegation, but he alleges no facts to support the allegation. Specifically with regard to Humphrey's double-celling policy, the Plaintiff does not allege that Humphrey knew or even should have known that his double-celling policy had resulted in constitutional violations. He does nothing more than allege that a facially constitutional policy may, in this one instance, have been applied improperly. That is not enough. Accordingly, the Plaintiff has failed to allege a claim for supervisory (or policymaker) liability against Humphrey. Because the Plaintiff alleges no constitutional violation by Humphrey, he too is entitled to qualified immunity.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss is **GRANTED**.

**SO ORDERED**, this 17th day of February, 2015.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, JUDGE<br>
UNITED STATES DISTRICT COURT